# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner,

v.

Arthur M. Field, Respondent.

Appellate Case No. 2018-001042

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Pickens County
J. Cordell Maddox Jr., Circuit Court Judge

---

Opinion No. 27952
Heard January 15, 2020 – Filed March 11, 2020

---

## AFFIRMED

---

Attorney General Alan McCrory Wilson, Senior Assistant
Deputy Attorney General Samuel Creighton Waters, and
Senior Assistant Attorney General Brian T. Petrano, of
Columbia, for Petitioner.

James Todd Rutherford, The Rutherford Law Firm, LLC,
of Columbia, for Respondent.

---

**PER CURIAM:** The State indicted Arthur M. Field for multiple counts of securities fraud, forgery, and criminal conspiracy for defrauding investors out of almost $3 million. The State stressed in the indictment and in subsequent hearings that Field's

crimes deprived hard-working men and women of savings for their children's education and their own retirement.  "It is the kind of crime," the State told the sentencing court, "that spans generations, that has lasting effects -- not just on the 688 [investors] -- but on their children, their grandchildren, and their great-grandchildren."

Field pled guilty to all charges pursuant to a plea agreement under which the State promised not to argue for any specific sentence.  The sentencing court sentenced him to ten years in prison, but suspended the sentence on the service of twenty-six months, with restitution to be paid during five years of probation.  The court specifically provided Field should receive sixteen months of credit for time served.  Eight days later, after applying the sentencing court's credit for time served order, the department of corrections released Field from prison.[1]  The same day, the State filed a motion to reconsider, which the sentencing court later denied.

The State now appeals the decision of the sentencing court to grant Field credit for approximately ten months of post-indictment time when Field was not in jail and—the State argues—not "under monitored house arrest."  Section 24-13-40 of the South Carolina Code (Supp. 2019) permits a sentencing court to award credit against a sentence of incarceration for pretrial time not served in jail but on "monitored house arrest" as a condition of bond.  S.C. Code Ann. § 24-13-40 (Supp. 2019) ("In every case in computing the time served by a prisoner, full credit against the sentence must be given for time served prior to trial and sentencing, and *may be given for any time spent under monitored house arrest*." (emphasis added)).  The court of appeals affirmed.  *State v. Field,* Op. No. 2017-UP-455 (S.C. Ct. App. withdrawn, substituted, and refiled Apr. 4, 2018).  We granted the State's petition for a writ of certiorari.

The State presents a strong argument on the merits.  After Field served a month in jail, the bond court amended his original bond order to permit him to leave jail on house arrest.  Approximately five months later, however, Field's attorney asked the bond court to "take him off house arrest."  The bond court stated on the record "I'll take the house arrest off so he can go, but I'll leave the [electronic monitor] on."  The bond court wrote in the bond modification order "motion to amend bond as to house arrest is granted."  Field spent approximately ten months under this arrangement

---

[1] The sentencing court granted Field's request to not be taken into custody immediately and permitted him to report to prison three days later.  Thus, Field served only five of the eight days.

before pleading guilty and being sentenced. At a subsequent hearing, the sentencing court agreed with the State's argument that "being on a monitor is not house arrest."

Nevertheless, we decline to reach the merits of the State's appeal. At the time Field's sentence was imposed, the State knew the bond court removed the house arrest restriction approximately ten months earlier. Thus, the State knew Field was entitled to credit only for the one month he spent in jail, but also knew Field could ask for credit for the five months he actually spent on house arrest. Field specifically asked the sentencing court to "give him credit for the fifteen months that he's served on house arrest." When the sentencing court announced on the record it was giving credit for the one month in jail "and for the fifteen months," the State did not object. The sentencing sheets clearly show credit for "33 days + 15 months house arrest."

We are inclined to agree that the sentencing court did not have the authority to give Field credit for the entire fifteen months. We agree with Field, however, that the State did not preserve the issue for appeal. We focus not on the lack of any objection at the sentencing hearing, but on the position the State took in its motion to reconsider the sentence. When the State filed the motion, the State did not argue the sentencing court committed error. Instead, the State merely asserted "pursuant to the plea agreement any sentence is in the discretion of the court, so the State has simply filed this motion to reconsider to preserve jurisdiction in case the sentencing result is inconsistent with [the] court's intent." At the hearing on the motion, the State again did not argue the court committed error, stating, "I wanted to file a motion to preserve jurisdiction so your honor could -- or not, whatever your honor decides -- correct that, um, matter if your honor decides."

The State's careful choice of its words is important here. Pursuant to the plea agreement, the State was not permitted to argue for a specific sentence. Similarly, the State was not permitted to argue on reconsideration that the sentence was too lenient. It is abundantly clear the sentencing court did not mistakenly give Field a sentence that would require him to serve only a few more days. The court stated, "I will tell you [the sentence], to me, is unbelievably lenient. I will take any criticism that I get on that. Any questions?" The court was clear its intent was not to keep Field in prison, but to seek restitution. The court stated, "The main thing I want here, and I know that it is never going to happen, but there is a shred of hope that at some point some of these victims might get their money back. . . . I am hoping that [the five years probation] will . . . allow them to continue to investigate where the money is." The sentencing court later stated, "Ultimately, what I want to come out of here with is an order that is clear and requires Mr. Field to pay money *or* he's going to prison." (emphasis added).

The State was well aware that if it pushed too hard arguing the sentencing court committed error as to credit for time served, the court could simply reduce the amount of active time from twenty-six months to something that would accomplish the same goal: get Field out now so he could start working on restitution. With this concern in mind, the State chose its words carefully, arguing only that the sentencing court could do "whatever your honor decides." This is what the sentencing court referred to when it stated, "We're all dancing on the head of a pin." On appeal, however, the State squarely argues the sentencing court committed error in giving the disputed ten months of credit. As we have repeatedly held, "A party need not use the exact name of a legal doctrine in order to preserve it, but it must be clear that the argument has been presented on that ground. A party may not argue one ground at trial and an alternate ground on appeal." *State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003) (citations omitted).

For these reasons, we decline to address the merits of the State's appeal.

**AFFIRMED.**

**BEATTY, C.J., KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**